JOHN M'LANAHAN and MICHAEL M'LANAHAN, surviving Executors of JOHN M'LANAHAN, with notice to JACOB ICKUS, terre-tenant, *against* JOHN WYANT, Administrator of MARTHA M'LANAHAN.

#### IN ERROR.

Judicial sales of land, divest all liens, whether general or specific.

When a legacy is charged upon land, the sheriff's vendee takes the land, discharged from the lien of the legacy. And a purchaser of land, sold by an administrator, by an order of the Orphans' Court, takes the land discharged of the lien of a legacy.

To recover a legacy charged upon land, the most approved form, is to bring the suit against the executors *and* the terre-tenants of the land generally by name.

If the terre-tenants have not all been summoned, the plaintiff may pray a writ to summon the person alleged to be terre-tenant; and by this means he may be made a party in the same manner as if he had been summoned or returned by the sheriff, as terre-tenant of the land.

When a testator, by his will, blends his real and personal estate, he thereby charges his land with the payment of legacies.

THE record of this case, returned on a writ of error to the court of common pleas of Franklin county, showed, that it was an action brought by the defendant in error, who was plaintiff below, against the plaintiffs in error, defendants below, to recover a legacy due to *Martha M'Lanahan*, under the will of her husband, *John M'Lanahan*. The material part of the will is as follows:

" First, I give and bequeath unto my beloved wife *Martha*, the sum of six hundred pounds, specie, Pennsylvania currency—one hundred pounds thereof is to be paid unto her one year after my decease, by my executors, and the residue in gales of twenty-five pounds a year, yearly and every year, until the whole sum of six hundred pounds is fully paid unto her, her heirs or assigns; and

(John M'Lanahan and Michael M'Lanahan, surviving executors of John
M'Lanahan with notice to Jacob Ickus, terre-tenant *v.* John Wyant, ad-
ministrator of Martha M'Lanahan.)

also is to have a room to herself in the mansion house, and a com-
fortable living; and also to have one mare and two cows to herself,
to be kept and fothered on the plantation for her use, with stable
room · for the same, during her widowhood.   To my sons, *John
Thomas,* and *Michael,* I give and bequeath all my real and perso-
nal estate, with all the appurtenances thereto belonging, excepting
such part as hereafter reserved for the remaining legatees, subject-
ing my land, nevertheless, to be liable to the several payments
hereafter mentioned.   To the legatees of said estate the land is to
be equally divided in quantity and quality, having due regard to
the real value of the same, to be divided by themselves, and in case
of disagreement, to choose men for the same, allowing my eldest
son, *John,* the mansion house, and that part which will be most
suitable for the same, allowing him, likewise, two hundred pounds
advantage in said division, on account of his mother's maintenance.
To my son *Samuel,* I give and bequeath the sum of one hun-
dred pounds, which he has already received.   To my son *Josiah,* I
give and bequeath the sum of four hundred pounds, together with
what he has already received, to be paid to him in manner following:
fifty pounds three years after my decease, and then fifty pounds a
year until the whole sum is fully paid.   To my daughter *Martha,* I
will and bequeath the sum of twenty shillings, and furthermore allow
my beloved wife *Martha,* and my son *John,* to pay her one hundred
pounds, or to her children, to which either they please.   To my
daughters, *Jane, Rebecca, Lethis* and *Elizabeth,* I will and be-
queath the sum of two hundred and fifty pounds each, together
with good bed and bed clothing to each, . deducting from *Jean* the
value of what she has already received in stock and furniture, and
then to be paid in the following manner, that is to say, to my
daughter *Rebecca,* the sum of fifty pounds one year after my
decease, and two years after my decease, fifty pounds unto my
daughter *Jane,* and so on yearly and alternatively, until the afore-
said legacy is fully paid unto them, their heirs or assigns; and then
is to pay fifty pounds to my daughter *Lethis* in one year following;
and then fifty pounds the year after unto my daughter *Elizabeth,*
and so on alternatively, fifty pounds yearly, until their aforesaid
legacies is paid unto them, their heirs and assigns; and to my
daughter *Elenor,* I will and bequeath the sum of four hundred
pounds, out of which she is to get sufficient schooling, and the re-
mainder to be paid in the following manner, fifty pounds to be paid
to her again she will be eighteen years of age, and then fifty
pounds yearly until the aforesaid sum is fully paid unto her, and
for the purpose aforesaid.   I nominate, ordain and appoint my
three sons, *John, Thomas* and *Michael,* to be my lawful executors
13

(John M'Lanahan and Michael M'Lanahan. surviving executors of John
    M'Lanahan, with notice to Jacob Ickus, terre tenant, *v.* John Wyant,
    administrator of Martha M'Lanahan.)

of this my last will and testament, to pay and recover all just debts,
and discharge the legacies within mentioned."

On the 16th of December, 1824, the following declaration was
filed.

"John M'Lanahan and Michael M'Lanahan, both of the county
aforesaid, yeomen, surviving executors of the last will of John
M'Lanahan, of said county, deceased, were attached to answer
John Wyant, administrator of the goods and chattels and of Martha
M'Lanahan deceased, of a plea of tresspass on the case, &c. and
whereupon the said John Wyant, by George Chambers and Joseph
Chambers, his attornies complains, That whereas John M'Lanahan
in his life time, to wit, the seventh day of July, seventeen hundred
and ninety-seven, at the county aforesaid, by his last will and testa-
ment in writing, duly executed, did, among other things, bequeath
unto his wife, Martha M'Lanahan, the sum of six hundred pounds;
to be paid as follows to wit: one hundred pounds to be paid the
said Martha, one year after the decease of the said testator, and
the remainder thereof in gales of twenty-five pounds per year,
yearly, and every year thereafter, until the whole sum of six hun-
dred pounds was fully paid to the said Martha, her heirs and assigns.
And that the said testator, by his same will, did further devise and
bequeath to his said wife Martha, a room in his mansion house and
a comfortable living, and also one mare and two cows to be kept
on the plantation of the said testator during the widowhood of the
said Martha: and the said testator, John M'Lanahan, did, by his same
will, devise to his three sons, John, Thomas and Michael, all his real
and personal estate, excepting such portion of his personal estate as
was by his will otherwise disposed of; and by his last will and testa-
ment, did therein appoint his three sons, John, Thomas and Michael,
executors, to pay and receive all just debts, and discharge the
legacies mentioned in said will, and the said John Wyant in fact
saith, That after the making of said will, to wit, the first day of
March, seventeen hundred and ninety-eight, the said John M'Lana-
han, deceased, and the aforesaid sons, John, Thomas and Michael
M'Lanahan, did duly prove the said will on the day and year last
aforesaid, and took upon themselves the burden of the execution
thereof, and did then and there possess themselves of all the real
and personal estate whereof the said testator died seized and pos-
sessed; and the said John Wyant further in fact saith, that the
estate of the said testator, to a great amount beyond all debts, and
funeral expenses, and legacies mentioned in said will, came into the
hands and possession of the said executors, to wit, at the county
aforesaid; and the said John Wyant doth further, in fact, say, that
the said executors, John, Thomas and Michael did, as devisees of the
real estate of the said testator, immediately after the decease of

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant, *v.* John Wyant, administrator of Martha M'Lanahan.)

the said testator, enter on the lands which were of the said deceased, in the said county of Franklin, and possess and enjoy the same, as devised to them in said last will and testament: and that afterwards, to wit, the third day of May, eighteen hundred and seventeen, Thomas M'Lanahan, one of the said executors and devisees, died, by reason whereof the said John and Michael M'Lanahan became the surviving executors of said testator, and of the said lands and tenements so devised, and of a value more than sufficient to pay all debts and legacies, the said John and Michael M'Lanahan, devisees as aforesaid, were at the impretation of this writ, possessed, together with Jacob Ickus, named in the same writ, as terre-tenant, and which said Ickus doth hold and enjoy the possession of said premises, as the tenant of the heirs and representatives of the said Thomas M'Lanahan, deceased. By reason whereof the said executors and devisees became liable to pay to the said Martha, in her life time, the said sum of six hundred pounds: nevertheless the said John, Thomas and Michael, the said sum of six hundred pounds, or any part thereof, to the said Martha, in her life time, or to the said John Wyant, after the death of said Martha, (who died, to wit, the fifteenth day of June, in the year one thousand eight hundred and nineteen, and to which said John Wyant, after the death of the said Martha, to wit, the twentieth day of September, eighteen hundred and twenty-one, administrator of the goods and chattels, rights and credits which were of the said Martha, was committed by the register of the said county of Franklin, in due form of law,) yet hath not paid, although to do the same, the said John, Thomas and Michael, executors and devisees as aforesaid, by the said Martha in her life time, to wit, the first day of January, one thousand eight hundred and seventeen, and at other days and times before and after said day, and the said John and Michael, surviving executors and devisees since the death of the said Thomas by the said John Wyant since the death of the said Martha, were requested; but the said legacy to the said Martha in her life time, and to the said John Wyant, since the death of the said Martha the said John M'Lanahan, and Michael M'Lanahan to pay have refused, and the same to pay to the said John Wyant, the said John and Michael M'Lanahan, surviving executors and devisees as aforesaid, still do refuse, to the damage of the said John Wyant one thousand pounds, &c. &c."

28th March, 1826, defendants, *John* and *Michael*, pleaded in abatement as follows:

"And now the said *John* and *Michael* by *James Dunlop*, their attorney, come and defend the force and injury when, &c. and say, that the said plaintiffs ought not to have and maintain his aforesaid action thereof against the said *John* and *Michael*, because they are

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre tenant, *v*. John Wyant, administrator of Martha M'Lanahan.)

not chargeable as executors of the said *John M'Lanahan*, deceased, with the payment of the said legacy of two hundred and fifty pounds, but that the lands and tenements of the said *John M'Lanahan*, deceased were, by the last will and testament of said *John*, subjected to the payment of the said two hundred and fifty pounds, and so charged and encumbered were by the said last will and testament devised to the said *John* and *Michael*, and *Thomas*, another son of the said *John*, deceased.

"And the said defendants further say, that the said *Thomas* so being jointly seized with the said *John* and *Michael*, afterwards, to wit, January term, one thousand eight hundred and nine, out of the court of common pleas in and for said county of Franklin, sued and prosecuted a writ of partition against the said *John* and *Michael*, and that after the return thereof, viz, on the fifth day of March, one thousand eight hundred and eleven, the said *Thomas*, *John* and *Michael*, parties thereto by consent, submitted the matters thereof to certain referees, mutually chosen, who divided the said lands so devised to and amongst the said *John*, *Michael* and *Thomas*, and made report to the said court to January term, one thousand eight hundred and eleven, agreeably to the said submission, which said report was then confirmed by the said court, and fully acquiesced in by the said parties continually thereafter.

" And the said *John* and *Michael* further say that afterwards, and in pursuance thereof, the said *John*, *Michael* and *Thomas* took possession of their several purparts so laid off and divided, and became severally seized of their separate and distinct purparts, according to the said report and judgment of said court, each one in his own demesne as of fee and being so seized of their distinct and separte purparts; the said *Thomas* afterwards, viz, on the          day of April, one thousand eight hundred and eleven, died, leaving three children, viz, Alexander, Amelia and Catharine, who, at the time of the impetration of the writ in this cause, were and still are, in full life and residing within the jurisdiction of this court.

" And the said *John* and *Michael* further say, that *John Flanagan*, Esq. who was duly appointed administrator of all and singular, the goods and chattels, rights and credits which were of the said *Thomas*, by the register of the said county of Franklin, afterwards, to wit, on the twenty-first day of May, one thousand eight hundred and eighteen, sold and conveyed of the said purpart of said *Thomas*, in pursuance of a decree of the orphans' court of said county, nine acres and three perches to *John M'Gee*; twenty-one acres and eighty-seven perches, to *Richard Hayden*; thirty-five acres and ninety-eight perches to Doctor *John Oelig*; fourteen acres one hundred and thirty-two perches to *James Gettys*, and that two hundred acres of the said purpart of the said *Thomas*, was purchased at

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant *v.* John Wyant, administrator of Martha M'Lanahan.)

sheriff's sale, from *Archibald Flemming*, Esq. high sheriff of said county, by *Samuel Hughes*, Esq. which said two hundred acres were sold by the said sheriff, under a *fieri facias* and *venditioni exponas*, issued out of said court of common pleas of said county, of which said two hundred acres the said *Samuel* is now seized in his demesne as of fee, all which several tracts or parcels thus sold and conveyed, were parts of the said purpart of which the said *Thomas* so died seized. And the said *John* and *Michael* further say, that the said *John Oelig*, after the said sale so made to him by the said administrator, sold and conveyed, by deed, the said thirty-five acres to *James Burns*, and *Isaac Moorehead*, as an insolvent debtor, under the laws of this commonwealth, in trust, for the use of his creditors; and that the said *John M'Gee*, after the 21st day of March, 1818, died, leaving *Barnard M'Gee*, his brother, his sole heir at law, all which said several persons, viz: *Barnard M'Gee*, *Richard Hayden, James Burns, Isaac Moorehead, Martin Funk, Samuel Hughes*, and *James Gettys*, at the impetration of the said writ issued in this cause, were and still are tenants of the said several purparts, according to their said respective titles, of which the said *Thomas M'Lanahan* died seized as aforesaid, and that the said *Catharine, Alexander* and *Amelia*, since the death of their father, the said *Thomas*, continually have been, and still are, in full life and seized in their demesnes as of fee in the remaining part of said purpart, of which the said *Thomas* died seized, and that no writ hath issued against either of the said tenants or children, and heirs of said *Thomas*, nor against the said *James Burns, Isaac Moorehead, Richard Hayden, Martin Funk, Samuel Hughes*, and *James Gettys*, or either of them, and this they, the said *John* and *Michael*, are ready to verify, and, therefore, inasmuch as no writ hath issued out of the common pleas of said county, against them, the said *Catharine, Alexander* and *Amelia*, and against *James Burns, Isaac Moorehead, Barnard M'Gee, Richard Hayden, Martin Funk* and *James Gettys*, to the said sheriff of the county directed, they, the said *John* and *Michael*, pray judgment, if they ought to be compelled to answer the said writ returned."

The plaintiff demurred to this plea, and after argument the court of common pleas made the following order.

" The court do adjudge that the defendants ought not now to be compelled to answer, and order that notice of this action be given to the several terre-tenants named by defendants (in their plea of abatement) returnable at next term, and that the person so named after service be added as terre-tenants. And the defendants now of record agree not to take any advantage of the mode of bringing in the other terre-tenants. The death of *Isaac Moorehead* and *Richard Hayden*, terre-tenants (in plea) suggested; *exit* notice to

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre tenant *v.* John Wyant, administrator of Martha M'Lanahan.)

terre-tenants. 28th July, 1826, served personally upon *James Burns, Martin Funk, Samuel Hughes, Catharine M'Lanahan, Amelia M'Lanahan,* and *Alexander M'Lanahan, nihil* as to *Bernard M'Gee* and *James Gettys.* 2d September, 1826, rule on terre tenants to plead in six weeks or judgment. July 24th, 1827, *John M'Lanahan,* and *Michael M'Lanahan* plead payment with leave, &c. and set off. 2d August, 1827; *exit* notice to *Henry Funk,* served by copy. *Washington* appears for *Samuel Hughes, Jacob Ickus, Barnard M'Gee* and *Martin Funk,* 17th September, 1827, rule on *Henry Funk, Samuel Hughes, Jacob Ickus* and *Martin Funk,* to plead in thirty days or judgment. 18th September, 1827, copy served. *Washington* appears for *James Burns, James Gettys* and *Henry Funk,* and for all the terre-tenants for whom he has appeared, pleads payment with leave to give the special matter in evidence. Plaintiff replies *non solvit,* &c. issue, &c.

The will of *John M'Lanahan,* Sen. having been read, the defendants offered in evidence the following receipt; it having been first admitted that *John Smith* was married to *Jane M'Lanahan,* one of the heirs of *Martha M'Lanahan,* and that the receipt was dated after the death of *Martha M'Lanahan.*

"Received, October the 11th, A. D. 1819, of *John M'Lanahan,* executor of *John M'Lanahan,* Sen. deceased, one hundred dollars, it being in part coming to *John* and *Garrett Smith,* heirs of *Martha M'Lanahan,* deceased, one hundred dollars, received per me,
"*John Smith.*"

Which evidence was objected to, and overruled by the court, and exception taken by the defendants.

On behalf of the terre-tenants it was proved that *John Flanagan,* administrator of *Thomas M'Lanahan,* who was one of the executors of *John M'Lanahan,* deceased, in March, 1818, petitioned the orphans' court for an order to sell the real estate of *Thomas M'Lanahan,* his intestate, for the payment of debts, to wit, two hundred and ninety acres of land, being the same estate which he took under his father's will; upon which petition the court granted an order for the sale of ninety-eight acres, part thereof, which in May, 1818, in pursuance of that authority, the administrator sold in parcels, to wit:—nine acres to *Bernard M'Gee,* for six hundred and thirteen dollars twenty-seven cents; twenty-one acres and eighty-seven perches to *Richard Hayden,* for fifteen hundred and eight dollars twenty-six cents; thirty-five acres and ninety-eight perches to *John Oelig,* for twenty-four hundred and ninety-two dollars eighty-seven cents; fourteen acres and one hundred and thirty-seven perches to *Martin Funk,* for eleven hundred and eighty-nine dollars fifty cents; thirteen acres and one hundred

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant, *v*, John Wyant, administrator of Martha M'Lanahan.)

and thirty-two perches to *James Gettys*, for sixteen hundred and twenty-nine dollars ninety-six cents; amounting, in the whole, to six thousand eight hundred and thirty-one dollars eighty-seven cents, which sales were confirmed by the court.

Subsequently, to wit, in 1821, two judgments were obtained against *Thomas M'Lanahan's* estate, upon simple contract debts, in favour of *John H. Hughes* and *Samuel Hughes*, Esq. and one judgment in favour of *Riddle* for the use of *Calhoun*, upon which a *fi. fa.* issued, the balance of *Thomas M'Lanahan's* estate, to wit, the two hundred acres, was levied, and it was afterwards sold by the sheriff, on the 12th April, 1824, to *John H. Hughes*, for his father, *Samuel Hughes*, Esq. for three thousand five hundred dollars, to whom the sheriff made a deed upon his executing receipts for so much of his judgments.

It was admitted that *Samuel Hughes* and *Jacob Ickus* represent the same interest.

It was also in evidence that *John M'Lanahan*, Sen. at the time of his death was possessed of a large stock of cattle, and considerable other personal estate.

1. The counsel of the plaintiff requests the court to instruct the jury, That the sales of the land of *Thomas M'Lanahan*, one of the devisees under the decree of the orphans' court, does not discharge the said land from the lien of the legacy, devised to *Martha*, the widow.

2. That the sale made by *Archibald Flemming*, Esq. as sheriff, to *John H. Hughes*, for *Samuel*, and the receipt by *Samuel Hughes* of the whole of the purchase money on his judgments, given in evidence to the jury, was a sale, under the circumstances of the case, subject to the lien of the legacy of *Martha*, and that the lien of the same is not discharged by said sale.

3. That if said lands, sold by the decree of orphans' court, or at sheriff sale aforesaid, if discharged at all from said lien, cannot in law be discharged, under the circumstances in evidence, from more than one third of the same, being *Thomas M'Lanahan's* proportion of the same.

The counsel of *Samuel Hughes, Bernard M'Gee, James Gettys, James Burns, Martin Funk* and *Henry Funk*, respectfully requests the court to instruct the jury:

1. That the legacy given to *Martha M'Lanahan*, by the will of *John M'Lanahan*, deceased, is not charged by the will on the lands of the said *John M'Lanahan*, and that plaintiffs cannot recover in this action against the terre-tenants.

2. That the sale of the lands of *Thomas M'Lanahan* to *Samuel Hughes* by the sheriff, by virtue of an execution against the administrator of *Thomas M'Lanahan*, divested the lien of the legacy, and

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan with notice to Jacob Ickus, terre-tenant, *v.* John Wyant, administrator of Martha M'Lanahan.)

that the plaintiff, therefore, is not entitled to recover from the said *Samuel Hughes* in this cause.

3. That the sales made by *John Flanagan*, administrator of *Thomas M'Lanahan*, of the lands of said *Thomas*, under a decree of the orphans' court, divested the lien of the legacy, and that the plaintiff is not entitled to recover in this cause against *Bernard M'Gee, James Gettys, James Burns, Martin Funk* and *Henry Funk*.

4. If the jury believe that *John M'Lanahan*, deceased, left sufficient personal estate for the payment of his debts and legacies, and that his executors are fully able to pay the legacy claimed in this suit, their verdict ought then to be in favour of the terre-tenants.

5. That the plaintiff cannot recover in this form of action.

The court delivered the following charge to the jury, on the points submitted.

In answer to the first point on part of the tenants in possession, the court say, The testator *John M'Lanahan*, devised his whole estate both real and personal to his three sons, *John, Thomas* and *Michael;* he appointed them his executors, and ordered them to discharge the legacies in his will. If they paid them at all, it must be out of the fund bestowed on them in the will. There are no words in the will which in express terms make the legacy to his wife a lien on the land devised, but it was to be paid out of the fund placed in their hands, and by necessary implication become a charge on the land in the hands of the devisees and executors, as a part of that fund. There is no evidence before us to shew precisely what the amount of the personal estate of the deceased was. The executors have paid out, on this legacy, one hundred and fifty pounds, and on the other legacies in the will eleven hundred pounds. It is submitted to you to determine whether these two sums, amounting to twelve hundred and fifty pounds, amount to as much as the personal estate of the deceased amounted to at his death. It is even admitted that these funds, arising from the personal estate, ought first to have been applied to the legacy now in suit, yet I am of the opinion that the application of those funds to the payment of the other legacies, which are expressly charged on the land, could not avail the terre-tenants, who claim under the sale made by virtue of the decree of the orphans' court. They come in under *Thomas M'Lanahan*. The payment of the legacies which have been paid, went in discharge of the lien on his land, and they must take it subject to this devise as it stood at the time of the sale. If a suit had been brought by the present plaintiff for the legacy at the time of the sale made by the administrator of *Thomas M'Lanahan*, most clearly his representatives could not have set up as a defence that the funds which ought to have been applied to the payment of this legacy which is charged on this

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant *v.* John Wyant, administrator of Martha M'Lanahan.)

land, had been misapplied by appropriating them to the payment of other legacies in the same will, which were also a charge upon the land. If he cannot set up such a defence, the purchasers at the sale under the decree of the orphans' court cannot set it up. They come in under him, and must hold the estate under the will as he held it. There is no proof here that any part of the personal assets of the deceased were wasted by the executors. The court are, therefore, not called upon to say what the effect of such devastavit would be: I am therefore of opinion, that the legacy given to *Martha M'Lanahan* by the will of *John M'Lanahan*, deceased, is so charged on the lands devised to his three sons, that the plaintiff can recover against the terre-tenants who have been brought on the record in this suit, and who defend their interests in it.

First point on part of plaintiff, and third on part of terre-tenants.

That the sale made by *John Flanagan*, administrator of *Thomas M'Lanahan*, deceased, by virtue of the decree of the orphans' court for that purpose, did not divest the lien of the legacy bequeathed to *Martha M'Lanahan*, in her husband's last will, and made a charge on said land by his will, and that the plaintiff in this case may recover a judgment which may be levied on the said lands, and in possession of the several tenants in possession who have been brought on the record, and who have defended their interests in this suit.

Second point on part of plaintiff, and second on part of terre-tenants.

It appears in evidence that a judgment was obtained at the suit of *James Riddle*, for the use of *James* and *Andrew Colhoun*, against *John Flanagan*, administrator of *Thomas M'Lanahan*, deceased, on which a *fi. fa.* was issued, and two hundred acres of land levied on, which were afterwards sold on an *alias venditioni exponas*, returnable to April term, 1824, to *John H. Hughes*, for three thousand five hundred dollars, who, it is admitted, purchased for his father, *Samuel Hughes*. At that time a suit was pending for this legacy, brought to August term, 1822, which was non-suited or abated at August term, 1824, that the money arising from the sale was all settled by the sheriff with *Samuel Hughes* on two judgments; one at the suit of *Foreman, Lane & Co.* against the administrator of *Thomas M'Lanahan*, deceased, and marked on the record for the use of *Holker Hughes*; the other at the suit of *Samuel Hughes*, against the same defendant, by the sheriff taking *Samuel Hughes'* receipt for eleven hundred and eighty-four dollars and fourteen cents on the first, and for two thousand nine hundred and eighty-four dollars and forty-nine cents on the second. Taking into view all these circumstances, and all the other circumstances in the cause, if there be any others

14

(John M'Lanahan and Michael M'Lanahan, surviving executors of John
  M'Lanahan, with notice to Jacob Ickus, terre-tenant, *v.* John Wyant,
  administrator of Martha M'Lanahan.)

which have any bearing on this point, if the jury should even be of
opinion that *Samuel Hughes* was the owner of the two judgments
on which the money arising from the sale was paid, yet the court
is of opinion that the sale made by *Archibald Flemming,* sheriff, on
the process given in evidence to *John H. Hughes,* and the receipts
by *Samuel Hughes,* of the whole of the purchase money, and the
judgment given in evidence was not a sale subject to the lien of the
legacy of *Martha M'Lanahan,* and, that therefore, the lien of the
said legacy was discharged by the said sale so far as related to the
land so sold, unless it was expressly understood and agreed at the
time of the sale, that *Hughes* purchased it subject to the lien of the
said legacy. The circumstance of there being a suit brought for
the legacy, or other notice of the existence of it to *Hughes,* at the
time of the sale, would not subject the land in his hands to the pay-
ment of it.

As soon as the sheriff's deed was acknowledged, the title to the
land vested in *Hughes,* discharged of the incumbrance of this legacy,
and the sheriff becomes liable to pay to the plaintiff the propor-
tion of the legacy which the land sold bears to the whole amount
of the land devised by *John M'Lanahan,* deceased, to his three sons,
charged with it. The only evidence before us of the value of the
land devised, is that which is furnished by the sale of that part,
which by the division made among the three sons of the testator,
fell to the share of *Thomas M'Lanahan,* deceased. The amount
of the sales made by the administrator is six thousand eight hun-
dred and thirty-one dollars and eighty-seven cents, the amount of
the sale made by the sheriff, is three thousand five hundred dollars,
in all ten thousand three hundred and thirty-one dollars and eighty-
seven cents; the lands were to be equally divided among them.
We may suppose, therefore, that the other two shares were equal
in value to the share of *Thomas.* The whole land charged with the
legacy would be worth about thirty-one thousand dollars. The
amount of the sheriff's sale being three thousand five hundred dol-
lars, the proportion that this sum bears to the whole amount of the
value of the land charged, if that value is to be ascertained by sup-
posing the other two shares to be worth the same sum that was
raised by the sale of *Thomas'* and no more, is as 7 is to 62, so that if
the jury should be of opinion that the value of the land should be
estimated according to this rate, 7-62, or about 1-9 of the legacy,
would be the proportion which ought to have been paid by the
sheriff out of the proceeds of the sales made by him of the land to
*Samuel Hughes.* That proportion of the legacy which was charge-
able in equity on the land sold by the sheriff, is to be credited in
this suit. The plaintiff is to look to the sheriff for that part, and
for the residue thereof, the remaining lands, devised in the hands

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant, *v.* John Wyant, administrator of Martha M'Lanahan.)

of the executors of *John M'Lanahan* and *Michael M'Lanahan*, and the several tenants in possession, who are made parties to this cause, are responsible in this suit.

Third point on part of plaintiff.

The court have, already, in substance, answered this point. The lands are not, in the opinion of the court, discharged of the lien of the legacy, by the sale made under the order of the orphans' court. The lands in the hands of the executors of *John M'Lanahan*, deceased, and of the tenants in possession made parties to this suit, are discharged from no more of said legacy than the proportion thereof which ought, as the court has said, to have been paid out of the sheriff's sale.

Fifth point on part of terre-tenants.

That the action can be maintained in its present form, and the plaintiff may recover in it.

Fourth point on part of terre-tenants.

If *John* and *Michael M'Lanahan*, the surviving executors, received sufficient of the personal estate of the testator, to pay the debts and funeral expenses of the testator, the other legacies, and the legacy in question in full, that would make them liable to the present plaintiff to pay the whole amount of *Martha's* legacy. But that circumstance would not, however well able the executors may be to pay the legacy, exonerate the land devised to *Thomas M'Lanahan* in the hands of the tenants in possession made parties to this suit, until the legacy was actually paid, nor would it be a sufficient reason for rendering a verdict in their favour in this suit.

The jury returned the following verdict "That they find for the defendants *Samuel Hughes* and *Jacob Ickus*: and that they find for the plaintiff two thousand and forty-seven dollars and eight cents, against the other defendants:" upon which, judgment *de terris*, was entered.

In this court the following errors were assigned, on behalf of *John* and *Michael M'Lanahan*.

1st. The court erred in saying that the lands bought by *Samuel Hughes*, at sheriff's sale were discharged of the legacy.

2d. In saying that if they were discharged, that only one ninth of the legacy was discharged.

3d. In saying that the action could be supported under the pleadings.

4th. In rejecting the evidence mentioned in the bill of exceptions.

And the following errors were assigned on behalf of all the terre-tenants against whom judgment was rendered.

1st. The court erred in saying that the legacy given to *Martha M'Lanahan*, by the will of *John M'Lanahan*, deceased, was charged on the lands devised to his sons by said will.

(John M'Lanahan and Michael M'Lanahan surviving executors of John
  M'Lanahan, with notice to Jacob Ickus, terre-tenant, *v.* John Wyant,
  administrator of Martha M'Lanahan.)

2d. In saying that the sale made by the administrator of *Thomas
M'Lanahan*, in pursuance of the decree of the orphans' court, did
not discharge the lands so sold from the lien of the legacy.

3d. In saying that one ninth part of the legacy would be the
proportion which ought to have been paid by the sheriff, out of
the proceeds of the sale made by him of the lands to *Samuel
Hughes.*

4th. In saying that the receipt by the executors of *John M'Lana-
han* of sufficient personal estate, for the payment of all debts, fune-
ral expenses and legacies in full, together with their present ability
to pay the legacy, would not be a sufficient reason for rendering a
verdict in favour of the terre-tenants.

5th. In saying that the action could be maintained in its pre-
sent form.

*Dunlop,* for the plaintiffs in error.

There are three distinct interests represented in this cause.
First, the plaintiff, who is interested to preserve the security or
fund out of which the legacy to his intestate was payable, and
therefore, to maintain the position, that neither the lands sold by
the sheriff, nor those sold by the order of the orphans' court, are
thereby discharged from the lien of the legacy. Second, the de-
fendants, who in this particular agree with the plaintiff, for the
purpose of producing this result, that all the lands which descend-
ed from *John M'Lanahan,* Sen. charged with the payment of lega-
cies, in whose hands soever they may be, shall justly contribute
their proportion to the payment of those legacies, and that thereby
the defendants, the surviving executors, shall not be called upon to
pay more than their part in proportion to the lands which they
hold. And third, the terre-tenants, whose interest it is, to hold the
lands they purchased from the sheriff and administrator, discharged
of all lien or incumbrance of those legacies, and to turn those
legatees to the sheriff for their money out of the proceeds of sale.

Upon the first error assigned he proceeded to say, that he would
first endeavour to satisfy the court that the point had not arisen
directly, nor had it been decided by this court, in any case which
had been reported in our books; that although an intimation had
been given in the case of *Barnit* v. *Washebaugh,* 16 *Serg. & Rawle,*
410, yet, that was but the opinion of the judge who delivered the
opinion of the court, for the point did not arise in that case: and
that the authority of the case of *Nichols* v. *Postlethwaite,* 2 *Dall.* 131.
was not entitled to consideration, in consequence of the imperfect
and erroneous report of the facts. And secondly, that there was
neither legal principle, nor public policy, upon which such a deci-
sion could be predicated: that it would violate the spirit and letter
of the act of assembly, which authorizes the sale of lands for the

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant *v.* John Wyant, administrator of Martha M'Lanahan.)

payment of debts, and provides, that " the purchaser shall hold the land as fully and amply as the debtor had and held the same," to sanction, by judicial decision, the doctrine that the sheriff could sell and convey a greater estate than the debtor had, or could himself sell and convey, and was about to cite authority on this point, when the chief justice said, that this point had been discussed at their last sitting in Sunbury, and the court considered the doctrine as settled against the plaintiff in error; and that, in all cases of judicial sales, the estate sold, passes to the purchaser discharged of liens.

Second error. If the legatees are obliged to come in and claim their legacies out of the proceeds of the sale by the sheriff or administrator, they must claim the whole amount; they come in as judgments, as is said by *Duncan,* J. in the case of *Gause* v. *Wiley,* 4 *Serg. & Rawle,* 522. There was, therefore, error in the opinion of the court, that only one ninth of the legacy was discharged.

Third error. The terre-tenants should have been made defendants, by being included in the writ, and so summoned by the sheriff. This is an action on the case for a legacy, and the terre-tenants are brought in after suit brought by a notice, and judgment rendered against them, although there is no claim made against them in the declaration of the plaintiff.

Fourth error. In a court of law, a payment to the heir of *Martha M'Lanahan,* would not be a good one; but this is an equitable action, and the court ought to have received the evidence mentioned in the bill of exceptions as an equitable payment. *Smith* represented the heir of *Martha M'Lanahan,* the plaintiff's intestate, and a part of the legacy to her, under the will of her husband, was paid to him; the legacy was due, there were no debts due by the estate of the intestate, and he was therefore entitled to it, in right of his wife, and received it, and the money could not therefore be recovered back from him, the evidence ought therefore to have been received to protect *John M'Lanahan* from a loss of the amount. *Share* v. *Anderson,* 7 *Serg. & Rawle,* 62.

*Washington,* for the terre-tenants.

1st. *Martha M'Lanahan* occupies a different relation to the testator from the other legatees, whose legacies are plainly charged upon the land: the legacy to her is not included among those, which by the will are expressly charged upon the land. The inference, therefore, from this distinction made by the testator, is manifest that his intention was, the one should be a charge upon the land devised, but that to *Martha* should not: and the intention of a testator to charge his lands with the payment of legacies must be clear and manifest. *Lupton* v. *Lupton,* 2 *Johns. Chan. Rep.* 614. *Keeling.* v. *Brown,* 5 *Ves. Jr.* 359.

(John M'Lanahan and Michal M' Lanahan. surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant, *v.* John Wyant, administrator of Martha M'Lanahan.)

4th. Although lands are expressly charged with the payment of legacies, yet if there is sufficient personal estate to pay them, and the debts, they must be paid out of that fund. *Commonwealth for use of Beelman*, v. *Shelby*, 13 *Serg. & Rawle*, 348.

*Chambers*, for the defendants in error,

In consequence of the intimation from the court, declined arguing the point, whether the sheriff's sale discharged the lien of the legacy, but contended, that the sale by the administrator did not.

An administrator derives his authority to sell land of his intestate from the act of assembly, which also points out all the duties, which, in the exercise of this authority, he is bound to perform: that act does not require one who is entitled to a legacy payable out of the estate of *John M'Lanahan*, to claim that legacy out of the proceeds of the sale of the real estate of *Thomas M'Lanahan;* nor is the administrator authorized to pay such a claim, although the act does expressly authorize him to pay judgments. The estate is the *interest* which a tenant hath in lands, &c. It was the estate of *Thomas M'Lanahan* which was sold by his administrator, and the proceeds of that sale was not the fund out of which this legacy was payable; nor is there any form of action known to the law by which the payment of it could have been enforced against the administrator of *Thomas M'Lanahan. Gause* v. *Wiley*, 4 *Sergt. & Rawle*, 522. The circumstance of there being no mode by which it could be ascertained what proportion of the legacy the administrator was bound to pay, ought to be a sufficient answer to the proposition to adopt this novel rule.

This is a proceeding in the nature of a bill in equity, and convenient for the purpose of attaining the object; no harm can result to terre-tenants from this form of action, and it is the one pointed out in the case of *Brown* v. *Furer*, 4 *Serg. & Rawle*, 213. But all objections on this point are removed by the agreement of the terre-tenants to appear and make defence.

The evidence rejected by the court, must have been offered either in the character of a set-off, or of an equitable defence.

It could not have been admitted as a set off because there was no mutuality of debt between the parties; nor as an equitable defence, because it could not be ascertained to what amount such evidence would be admissable: if there were no debts of *Martha M'Lanahan*, there were costs of administration, which is sufficient to shew the illegality of a payment to an heir, instead of a personal representative: *John Smith's* distributive share of *Martha M'Lanahan's* estate could not be ascertained in this suit, and therefore the inconvenience and uncertainty of admitting the evidence at all, under circumstances where there did not exist an absolute necessity for it.

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant *v.* John Wyant, administrator of Martha M'Lanahan.)

The same reason which rejects the evidence of the set-off of a debt, due by an intestate against a claim by the administrator, rejects this evidence, because at the time the evidence is offered, there is no means of knowing what portion of such set-off is payable. *Wolfersberger* v. *Bucher*, 10 *Serg. & Rawle*, 10.

Suppose that advancements had been made by *Martha M'Lanahan*, in her life time, to her heirs, is the court to stop and try to what extent those advancements had been made, in order to know how far the set-off was admissable? If this is the law, it would apply to a case where the trustee of an insolvent debtor brings suit to recover a debt due to the insolvent, the debtor might set-off a claim due to him by a creditor of the insolvent, who would be entitled to a distributive share of the insolvents property, when it would be divided by the trustee.

The legacy is a charge upon the land. *Hassenclver* v. *Tucker*, 2 *Bin.* 525. *Witman* v. *Norton*, 6 *Bin.* 395. Although the legacies to his daughters are expressly charged upon the land devised, this does not effect the legal implication that the legacy to his wife, *Martha*, was also a charge. 1 *Rop. on Leg.* 448–452: it cannot be presumed that it was the intention of the testator to make the legacy to his wife, who was the primary object of his bounty, less secure than those to his other legatees.

If both funds, real and personal estate, are charged with the payment of this legacy, the legatee has a right to pursue either or both until he gets his money. The personal estate of an intestate must first be applied to the payment of his debts; but a creditor is never restrained in his pursuit of either real or personal estate, whichever he may elect, until he collects his debt.

*Washington*, in reply.

The cases in 2 *Bin.* 525, and 6 *Bin.* 395, cited for the defendant in error, strengthen the position which is taken for the terre-tenants, for in either of the cases the *intention* of the testator. to charge his land with the legacies is manifest, which is not the case with *John M'Lanahan.*

*Dunlop*, in reply for plaintiffs in error.

If there was error in not making the terre-tenants parties to the action by including them in the body of the writ, their appearance and defence does not cure the error.

It does not appear, in this case, that there were any advancements by *Martha M'Lanahan* to her heirs, or that there were any debts, these difficulties are therefore imaginary.

The opinion of the court was delivered by

Rogers, J.—We think it clear that the legacy to the plaintiff's intestate, is a lien on the real estate devised to the sons, it is a

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan, with notice to Jacob Ickus, terre-tenant, *v.* John Wyant, administrator of Martha M'Lanahan.)

principle of English jurisprudence, as well as the unquestioned law of Pennsylvania, that when the real estate is blended by the testator with the personal, the land is charged with the payment of legacies. And the reason assigned is, that the whole will may take effect, and all the legacies be paid, which is justly supposed to be the intention of the testator, when both funds are put into one.   1 *Ves. Jr.* 444, *Kennedy* v. *Cousmaher.* 2 *Bin.* 531, *Hassenclever* v. *Tucker.* 6 *Bin.* 396, *Witman* v. *Norton.* 2 *Dall.* 131, *Nichols* v. *Postlethwaite,* 2 *Dall.* 131. And this effect is produced by implication, and is not effected by an express charge in favour of other legatees, as has been ruled in *Webb* v. *Webb,* 1 *Roper on Legacies* 433, a case equally strong with the present, where, in answer to a similar objection the court said, " The testator might use express words of charge in one part of his will, and create a charge by implication in another." The testator, in the phraseology used, and in charging the lands devised, with the payment of the legacies hereafter mentioned, does not so unequivocally express a contrary intention, as to curtail, or in any way interfere with the implication arising from blending the real and personal fund into one.

When a legacy is charged on land, the sheriff's vendee takes the land discharged from the lien of a legacy.   And this is the principle of the case of *Barnet* v. *Washebaugh,* 16 *Serg, & Rawle,* 410, decided after great deliberation, and since repeatedly recognized. And a purchaser of land, sold by order of the orphans' court, is in the same situation as a sheriff's vendee. The 21st section of the act of the 19th April, 1794, enacts, that no lands, tenements and hereditaments, sold by order of the orphans' court, shall be liable in the hands of the purchaser, for the debts of the intestate.   The lands went into the possession of the devisee, charged with the payment of the legacies, and was therefore a debt of the intestate as tenant of the land.

Judicial sales, as appears from the whole current of the recent decisions, divests all liens whether general or specific, and the exceptions to the rule, are grounded on special and peculiar circumstances.   The land sells better from passing into the possession of the purchaser unincumbered, and it is of no consequence to a creditor who sells it, provided it be sold fairly, and the proceeds faithfully applied.   It is the duty of the court to see that no loss results from improper practices, or the want of adequate security, in a sale under their order, and particularly subject to their controul. The proceeds of the sale must, in the first instance, be applied to the payment of liens, which existed in the life time of the intestate, according to their respective priority.   By the sale, the money is substituted for the land, to be distributed by the administrator among the creditors, in the order of the respective claims against

(John M'Lanahan and Michael M'Lanahan, surviving executors of John M'Lanahan with notice to Jacob Ickus, terre-tenant *v.* John Wyant, administrator of Martha M'Lanahan.)

the real fund, which by process of law has been converted into personalty for that purpose. A uniform rule applied to all judicial sales, avoids confusion, and a distinction such as has been adopted by the common pleas, is, we think, contrary to the spirit of all the cases which have been recently decided.

An objection has been taken to the form of the suit; the action is brought against the executor, with notice to the terre-tenant, who appears and pleads, without objection to the manner he was made a party. After this, we are unwilling to reverse the cause on that ground alone.

The most approved form, as appears from the precedents, is to bring the suit against the executors *and* the terre-tenants, who are generally most interested in the cause; for it is on the failure of the personal funds that resort is had to real estate. 2 *Saun.* 7, (*Jefferson v. Morton, et als.*) The action may be brought either against the tenants of the land generally, without naming them, or against them by name; but the former is the best form, and in England is constantly used; for if the plaintiff undertake to name them, he must name them all, and if he does not, those who are not named may plead in abatement, (*Chahoon* v. *Hollenbaugh,*) 16 *Serg. & R.* 432, (*Barresford* v. *Cole,*) 2 *Saun.* 7, *note* 4. When suit is brought against the terre-tenants generally, the sheriff returns specially the tenants of the land, who come in, and either plead generally to the action, or specially, that another person, naming him, was and yet is tenant of the land, and that no process has been yet issued against him, &c. and pray judgment of the court, if they ought to be compelled to answer to the said writ, in form aforesaid returned. And the reason of this plea seems to be, that every tenant of the land is entitled to have contribution, that is, all the lands bound in the hands of the several purchasers, or owners thereof, must be equally charged; therefore, unless all the tenants be warned, the others are not obliged to answer. And if the tenant does not take advantage of the omission in the first instance, by a plea of this sort, which he may do, notwithstanding the sheriff's return, it would seem he loses the benefit of contribution, or of relief by *audita querela,* in case execution is taken out against his land alone. *Cro. Jas.* 506, *Mitchell* v. *Croft. Mun.* 525, *Clark* v. *Hardmiller.* In England, he cannot plead it after a plea in bar. *Sir Wm. Jones,* 349, (*Eyers* v. *Cowley,*) 2 *Saun.* 7, *note* 10. On the plea, that all the terre-tenants have not been summoned, for the having speedier justice, the plaintiff may pray a writ to summon the person alleged to be terre-tenant, which is granted to him by the court; and by this means, when summoned by the sheriff, he is made a party in the same manner as if he had been summoned, or returned by the sheriff as terre-tenant of the land.

Judgment reversed, and a <em>venire de novo</em> awarded.